Attorneys in civil cases make choices. In the first trial below, what you had was a series of choices that were made by both counsel to simplify the instructions, to allow each side to argue to the jury those points that it wanted to make. And that's why the instructions were stipulated and the instructions were chosen that were used. So there was a choice made to use the Ninth Circuit model churning instructions both for the federal 10b-5 claim and for the state court fiduciary duty claim. And the reason is that in the context of this case, that instruction fulfilled the needs of both sides. And it didn't make sense to go and try and restate a separate fiduciary duty claim. And I think the proof of that is if you look at the reply brief filed by Gunnallen and the instruction that they suggest the court should have used, and you put that in with the instructions that we used, all you do is you confuse the instructions, but you don't change the issues which are before the There was no claim for relief which would give punitive damages. That argument that the fiduciary duty claim was just abandoned wasn't made in the Rule 50 motion. That's first made in the appeal. And that's, number one, that's too late to be making it. But I think in a civil case, when there's a claim of plain error, there's some obligation to explain why the error occurred. Was it a mistake? There's no allegation of mistake. The trial counsel who prepared the Rule 50 motion didn't argue that there was some oversight in the instructions. He just said, well, these instructions are wrong. And in hindsight, you know, after the verdict comes down, sure, let's look for anything that we might have done differently. But at the time that the instructions were prepared, the instructions made sense because the defense wasn't one which went into is the intent reckless versus intentional. The defense was we did everything right. We'd do it again. And that's a choice that they made. They had one attorney representing both the broker and the brokerage. So they weren't really in a position to be arguing that the broker had done something wrong and the brokerage didn't catch it. That's very hard to do when you only have one attorney representing both. They made a choice. The choice was to go into the jury and try and convince the jury that these humongous fees were reasonable. That's a high-risk argument. But that's the one they decided to make. And they lost. In the second trial, they had the California instructions. And they had the jury instructed punitive damages, if any. So the jury had the option to come back and say no punitive damages because using the California instructions, you don't have evidence that's clear and convincing of conduct by an officer, director, or managing agent. So they had the instructions that they wanted in the second trial. And they still had a punitive damage result. If they want to have a third trial, we can go do that. But I think a third jury is going to see it the same way that the first two did, that there just isn't an excuse to charge somebody $121,000 in commissions in three months on a $400,000 account. Nobody's going to make Warren Buffett, who's probably the best investor around, returns maybe 35%. Warren Buffett would lose his shirt paying the commissions that these people were charging. And that's the essence of the case. And unless they can separate themselves somehow from the commissions that were charged, Gunn-Allen doesn't have a defense. And two... Can I talk about the issues in your appeal, or do you just want to submit those on the paper? Well, I don't... I'd be happy to answer any questions with respect to the attorney's fees, but I think I'm satisfied with the briefing on that. And I think unless there's some questions, I just hold the balance of my time. Thank you. Thank you. Morning, Your Honors. Robert Solow for Gunn-Allen. Our appeal on the punitive damages issue poses two questions. May an award of punitive damages be sustained even though no underlying state law tort claim authorizing punitive damages was submitted to the jury? The answer to that is no. That's the issue in the first trial. The answer to that, no. We don't want a third trial. What we want is a reversal. The second issue is may an award of punitive damages in any amount be sustained even though there was no substantial evidence of egregious misconduct by a corporate officer, director, or managing agent? Was there... Was Noomi, or I don't know how to pronounce these people's names... That's right, Your Honor. Was Noomi a person who falls into that category as a compliance officer? He is the only person who falls into that category. The evidence on the record was he was an executive vice president of the corporation. All right, so he falls into the category you've just named. Yes, Your Honor. Executive employees. And he knew the amount of the commissions that were being charged, and he knew that it was 46 percent. Correct? That is correct, Your Honor. Okay. So it seems to me that your theory is that even if a corporate officer, director, et cetera, knows that a huge amount is being charged, if that person gets up and says, well, I don't really think it's too much, that that prevents the jury from finding punitive damages? Is that your theory? No, it is not, Your Honor. Mr. Noomi didn't simply get up and say, I don't think it's too much. What Mr. Noomi got up and said, he discussed his background. He'd been a compliance director at two other firms. He'd worked for the Securities Exchange Commission for three years. He knows how to analyze claims that an account had been excessively traded. And what he had available to him was not just the statistic on the commission that Your Honor cited, but he had available to him the new account documents signed by the client that stated he had an investment objective of speculation and an aggressive risk tolerance. And I think as this Court has held many times in churning cases, the key issue in evaluating whether an account has been churned is whether the activity is consistent with the investor's stated investment objectives. Why isn't that still a jury issue as to whether that even for an aggressive investor, that was an outrageous amount which annualizes to some astronomical figure? Well, I think the issue is one of knowledge. Well, he knew what was being charged. He knew what was being charged, but he did not know, and there was no evidence to suggest that he did know, that this was outrageous. Well, that goes back to my initial question. So he can come in and, I mean, under your theory, someone could come in and say, we charge 2,000 percent in a month, and I knew that, but I really did not think that was excessive. And the jury is not allowed to find that that supports punitive damages. If the statement is made without any background or rational basis, then a jury can infer that, can discount the testimony about what the witness believed and find that he did know, contrary to what he's saying, that this was outrageous conduct. But if the only evidence before the jury shows that this was a man with experience who analyzed the situation and came to a rational conclusion, no need. So people with experience and lots of information can't engage in outrageous behavior that supports punitive damages? They cannot come to the conclusion that a given level of activity in an account constitutes outrageous activity. If Mr. Newman had done nothing, that would be something else. If Gunn-Allen had a policy of not looking into things, that would have been something else. But he made an investigation and came to a rational conclusion, and again, a conclusion that even though the plaintiff's expert may have disagreed with it, is consistent with the standard that this and other courts have applied. But why wasn't the jury free to reject that testimony and say, we found it was outrageous on his face, he should have known better, therefore punitive damages? I mean, at this stage, we have to draw the inferences in favor of the jury verdict, right? That's correct, Your Honor. I think the court said he should have known. Should have known is not enough. Under the California Supreme Court's decision in the Children's Hospital case, it's you know about the contact and know of the conduct and know of its outrageous nature. So what you're saying is that as a matter of law, the jury couldn't have made that finding? I'm saying no reasonable juror could have made that finding. So actually, you were in a position to bring a motion for a judgment on the law before the case even went to the jury. Did you make the motion? We made a Rule 58 motion, Your Honor. And the Rule 58 motion asked for what? Asked that judgment be granted as a matter of law on the grounds that there had been insufficient evidence presented by the plaintiff of reprehensible conduct by an officer director or managing agent. And what did the judge do with that? He took it under submission and then denied it at the end of the case. And we renewed it as a 50-B motion. And then the trial entered in a second time? I'm sorry, Your Honor? Then you had a second trial. No, I was not at the first trial. What I have just described to the court You being the client. What I have just described to the court is what happened at the second trial. The second trial? At the second trial, there was a 50-A motion made at the closing of evidence. Well, I was asking what happened at the first trial. Was a motion made there? No, it was not, Your Honor. So at that point, it was waived. Well, I don't mean to interrupt. Well, let's assume that it's been waived. At least, if nothing else had happened, it would be very hard to argue that it wasn't waived. So now your argument has to be that when they give you a new trial on this issue, that we start from the beginning again so you have the right to bring that motion. The argument on the other side is, no, this is one trial. We're just retrying part of it so it was waived at the first trial and it can't be resurrected at the second trial. What cases are there out there that tell us what we do in a situation where there is a waiver, the judge finds a waiver, a failure to bring the motion in the first trial, and then you try just part of the case. Are there any cases that say that you can bring the motion in the second go-around? I'm not aware of any authority on that point, Your Honor, but let me make this distinction and then I'd like to address the waiver issue that the court raised. The distinction is what we're saying is in the first trial, the verdict awarding punitive damages cannot stand because there was no underlying tort claim. If we're wrong about that, there's a second trial and our attack there is on the award of $586,000 on a substantial evidence basis. The issues that I was discussing with Judge Graber are all issues that arise out of the second trial and Mr. Newman's conduct here. The issue that you were alluding to, Judge Wallace, is the issue that was raised at the first trial. As to the waiver point, I would submit two things. This is an issue of punitive damages. As the Supreme Court recognized in the line of cases beginning with Cooper Industries, imposition of punitive damages raises due process concerns and demands, to use the court's term, exacting appellate review. But counsel, you have not challenged the amount as excessive, which is what those cases primarily are about. That is what those cases are primarily about. Yes, Your Honor. But I'm correct about that. You are not challenging the amount per se. You're saying there's no evidence to support any. You're taking an all or nothing approach. That is correct, Your Honor. Okay. And the other waiver issue is kind of the flip side of what Judge Wallace was talking about, which is in the first trial you said there's no underlying tort. But it's my recollection that in the second trial, your 50A motion did not re-raise that issue. So did you waive that in the second trial? No, Your Honor. We essentially asked the trial court before the second trial, we said, you know, this is very confusing procedurally what's going to happen here. We think you ought to not give us a redo, but give us instructions that would pertain not just to the amount of punitive damages, but to the availability of punitive damages. He said, no, I'm going to instruct the jury about what the first jury found, compensatory damages and punitive damages. So you are not allowed to get up here and argue that there was no basis for the first jury to find punitive damages. That's the law of the case. And so what we were left with in the 50A motion was saying, okay, there's no substantial evidence of reprehensible conduct that would justify punitive damages in any amount. Was the judge's ruling that you were simply bound by the finding of compensatory damages? No punitive damages as well. We were not allowed to suggest in the second trial that there was no basis for an award of punitive damages. And we raised by motion to reconsider the denial of the 50B motion made by prior counsel, this issue that we're talking about now about the underlying tort. The court denied that motion. And then in pretrial before the second trial, we tried to raise it again. He said, no, that is water under the bridge. I'm going to tell the jury that there was punitive damages and you're not allowed to attack that basis. On the waiver point again, and I'm running out of time, I would submit for your consideration that the waiver doctrine ought to be narrowly applied in a case involving punitive damages because of the constitutional concerns and that you find waiver only in such a situation, only if there is a knowing and deliberate choice, to use Mr. Padway's word. Is there a best case for that? I have no case for that, Your Honor. And I have no case I can cite to you for my last point, which is this. There is the plain error standard, which is my refuge on this point. I know that this Court has a lot of cases in this Court decided before December of 2003 that say we don't recognize plain error in civil cases in the Ninth Circuit. In December of 2003, Rule 51 was amended to specifically authorize, 51D2, to specifically authorize the use of the plain error standard to review cases in which a party otherwise had waived his right to object to instructions. I have found no published opinion after December of 2003 in which this Court addressed the impact of the amendment, and I have found no non-published opinion issued after January 1, 2007, that I would be allowed to mention to you under Circuit Rule 36-3 in which that issue is addressed. And so I would ask that if this Court doesn't decide not to apply the normal standard of review in this case, that you review this first point under the plain error standard that you're authorized to do under 51D2. Now, I just have time to sum up and talk about waiver. Let me just, on the first point, and go back to what Mr. Padre was saying on the underlying tort. The fact is there was no instruction on breach of fiduciary duty. The fact is that Judge Zimmerman, in ruling on a subsequent motion, specifically states, and this is at the supplemental excerpts of record at 87, claims elected not to present this claim to the jury. So you don't have a jury verdict on a State law tort claim in the first trial. And you've got to have it before you can sustain and award punitive damages. I think the case that we cited in our reply brief, the Bass v. Hoey case, which is an Eighth Circuit case, is the analysis that I would respectfully urge this Court to undertake. In that case, the Court looked at the instructions that were given. Just like here, the plaintiff's argument was, well, I combined my State law claim with my Federal claim, and we had a combined instruction. The Court looked at the instruction and said, no, that doesn't state the elements of the tort law claim. And without an instruction on the elements of the tort law claim, you don't have a verdict on a tort law claim. And without a verdict on a tort law claim, you're not entitled to punitive damages. If you follow the same type of analysis that the Eighth Circuit followed in that case here, I think you've come to the same result. Now, on the second trial point, the substantial evidence point, we've discussed that. The other argument that I just wanted to mention before my time is up is, and it's in their opposition brief, we say you've got to focus on Mr. Neumeyer, and you've got to prove that Mr. Neumeyer knowingly ratified reprehensible  And I've discussed with you, Your Honor, the record on that. In addition, they say, and I don't know what Mr. Pedway is going to say in his reserve time. In addition, they say, well, there are corporate policies that justify there are substantial evidence justifying punitive damages. What are those corporate policies? Well, basically, what Mr. Pedway argued before the jury and in his brief here is that it's consumer protection. He says brokerage firms ought to give clients fee schedules. He says brokerage firms ought to disclose their commissions differently on the confirmations and monthly statements. And those terrible policies are what Gunn-Allen ought to be punished for, and that's what supports the punitive damages award. The problem with that argument is that his own expert, Mr. Brooks, stated that in each of those areas, there was no SEC, or it's now called FINRA, it used to be NASD, SEC or FINRA rule requiring us to do any of these things. And, in fact, based on his experience in the industry, no one else did them either. So these are policies that even by their own expert's testimony are not even negligent. How can they be reprehensible? Thank you, counsel. Thank you, Your Honor. Supervisor? If I might address the last point first, I think the industry standard that counsel referred to is a function of having these cases being shunted out of the court system for the last 25 years and mostly going to arbitration, which is why it's kind of a sidelight, but I think it's why the law in this area doesn't develop the way it should. I'm not going to solve that. What is the underlying tort to which punitive damages attach? The underlying tort is breach of fiduciary duty, and I think as the defendants put it in their first Rule 50 motion, it says, Plaintiff has conceded the punitive damage awards were premised upon his client's state law claim for churning. And that's how we shortened, because it wasn't a broad, you know, fiduciary duty encompasses a lot of things. So what we did is we said, no, what we're focusing on is churning. It's a breach of fiduciary duty under state law. It's also a Rule 10b violation, and the standards when you're focused on churning as the issue are going to be the same under either state or federal law. And we briefed it that way in our trial brief, and that's certainly how the defense understood it, and that's why the jury instructions are the way that they are. But the... So that's how it was played, and that's why even after the first trial, in the first trial, Gunn-Allen brought nobody to court. We had a couple of depositions read in, the gist of which was everything we did was right. Renee Emmerich testified that she was assigned to look into the complaint. She looked into it. She conferred with Mr. Neumey. Sent a letter saying everything we did was right. There was no justification as there was in the second trial. Second trial was a totally different thing. As a result of the first trial, the jury was argued on ratification, and the jury found punitive damages. Counsel, I'm sorry, I need to go back to my earlier question because I'm still processing it. Your complaint contains several claims for relief. The third claim for relief was for breach of fiduciary duty, but that's not what you're now talking about because your first claim was for churning, and it appears to be based only on regulatory violations. And I just... I'm not sure why that counts as a breach of fiduciary duty when it wasn't pleaded that way. Well, of course, if you look at the pretrial order and the trial brief, it makes it very clear that what we... Because, of course, as the case progresses, you refine your theories a little bit. But at that point, what we condensed it to was what the defendants refer to as our state law claim for churning. And that's, I think, the shorthand that we were using at that time for the breach of fiduciary duty claim because that's what it... The ultimate refinement comes in the jury instructions. That's what sets it. So they were only instructed on the statutory churning claim, right? What we used was the model, the Ninth Circuit model instruction for churning, which is... But the elements of that, if proven, would allow us to go to the judge and get a summary judgment on a breach of fiduciary duty under state law. So what we did is that's... So we said, fine, instead of having two instructions, we'll just have one. And it harms the plaintiff a little bit because we have this extra requirement to show interstate commerce, but, you know, we weren't too worried about losing the case on that issue. I'm sympathetic with your efforts to get attorney's fees, so I'm not harping, but it strikes me that churning is a tort under state law and you've got to get to contract under state law. It's both. Well, you cite me a case that says there's other than contract and I'd be happy to read it. It's... The way that we argued it as a contract violation is an unconscionable charge. And that's... That's how we have a... That's argument. But the state law is we give fees for contract, not for tort. That's the state law. Okay, now stay with me. Churning, we all know, is a tort. So you have your contract, your case coming along. You get to pretrial. And as you say, it was then identified as churning. Under the law of the state and the federal law, the pretrial order takes the place of the pleadings. So nothing in your pleadings will help you. So now you've got just a tort case. How do you get from there to a contract so you can get attorney's fees? Well, the contract part of the jury instructions from the first case. Well, while you're looking for that, let me ask sort of a supplemental question and you can fold it into your answer to Judge Wallace's question. It seems to be that your theories are at cross-purposes here. You're arguing you can get under the statutory provision fees because it sounds in contract. But if that's true, you may lose punitive damages. So first answer Judge Wallace's question and if you don't mind segueing back and answering mine. Okay. On page 22 of the first set of plaintiff claims there was no written or oral contract concerning the amount he would be charged for the services rendered by the defendants. And then if you find that the parties made a contract either in writing or orally concerning the amount to be charged for defendant's services, then the parties are bound by that agreement. Contracts may be written or oral. Oral contracts are just as valid as written contracts. And talks about offering acceptance. Okay. But here's where we get to what we proved. If you find that the defendant Gunn-Allen has not proven that there was a contract or agreement to pay a specific price for the services provided by defendant, then defendant Gunn-Allen is entitled to charge and the plaintiff Royall Yates is obligated to pay the reasonable value of the services rendered. That's a quantum merit though. That's not really a contract anymore. Well, I think that is. I think it's because what you have is you have a written contract that has all of the terms except price. So what you're implying, you're implying that there is a contract. I think that is a claim that sounds in contract. Well, you've got to be careful because then I don't see, if that's true, if your statutory theory is purely contractual, then I don't see I get punitive damages. I don't think you can have both in this case. I really don't. I've got to tell you, I don't think you can have contractual theory that gets you to attorney's fees and say that the same and all you have is the California statutory claim here that entitles you to one or the other. I mean, that's, I'm just speaking as one judge, but that's the way I see it. See, I think you can prove, I think you can't prove both. What's your case that says you can get both? I don't I think I think the Perry case talks about these, and let me just get the citation for it. Perry v. Robertson a 201 Cal F 333 is probably the closest that there is. It talks about the attorney's fees in terms of these hybrid claims which can be either tort or contract and that either suffices or it doesn't. When does it say it's both? I don't Let me back up a bit. Almost all churning cases are going to rise out of a contract initially because you have a brokerage contract. But it's the activity that makes it sound in tort, at least under the SEC and I think generally under state law. Go ahead. I think it can sound in both but I certainly understand the election of remedies could be a problem. If you have to alert, which is your preference? My preference, of course, would be the punitive damages would be substantially more. Well, I'll read Perry and see how far that gets you. Thank you. Thank you both for your argument. The case history will be submitted. And we'll hear argument in the next case on the oral argument calendar which is Bernard v. Las Vegas Metropolitan Police Department. Thank you.
judges: Wallace, Thomas, Graber